IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL DIXON III, | )<br>) |
| Plaintiff, | )<br>) |
| | ) No. 04 C 1630 |
| v. | )<br>)<br>) |
| ILLINOIS STATE BOARD OF<br>EDUCATION, and ROBERT E.<br>SCHILLER, individually as<br>Superintendent of the Illinois State<br>Board of Education, | ) Honorable Charles R. Norgle<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the court is Defendants' Motion for Summary Judgment. For the following reasons, the Motion is granted.

## I. BACKGROUND

### A. Facts

As a preliminary matter, the court notes that Plaintiff Daniel Dixon III ("Dixon") has failed to respond to Defendants' Motion for Summary Judgment. In the Northern District of Illinois, parties must follow Local Rules 56.1(a) and 56.1(b) during summary judgment proceedings. The party moving for summary judgment must, pursuant to Local Rule ("LR") 56.1(a)(3), file a statement of undisputed material facts which "shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the

1

record, and other supporting material relied upon to support the facts set forth in that paragraph." The nonmoving party must then file its Response, pursuant to LR 56.1(b)(3)(A), which must contain "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting material relied upon." Failure to respond properly (or at all) to the moving party's 56.1 statement has dire consequences. "Essentially, the penalty for failing to properly respond to a movant's 56.1(a) statement is usually summary judgment for the movant . . . because the movant's factual allegations are deemed admitted." Malec v. Sanford, 191 F.R.D. 581, 584 (N.D. Ill. 2000).

The court also notes that Defendants have competently prepared their LR 56.1 Statement. This Statement contains only material factual allegations, these allegations are contained within short numbered paragraphs, and these allegations are properly supported by citations to the record. See id. at 583. The following recital of the factual background to this case is therefore taken from the Defendants' LR 56.1 Statement, and the court deems the allegations contained within this Statement to be admitted. See id. at 584.

Dixon was hired by Defendant Illinois State Board of Education ("ISBE," or the "Board") in 1971. Defendant Robert Schiller ("Schiller") worked for ISBE as a Superintendent from August 2002 until October 2004. From 1995 until February 2002, Dixon worked as a Principal Consultant in the middle level education division of ISBE. In February 2002, the middle level education division was disbanded, and Dixon was transferred to a new division called eLearning. The eLearning division of ISBE was designed to help students increase their knowledge of computer technology. Dixon's duties included advising the eLearning division on computer and

Internet matters, and working on a committee concerned with the ISBE's internet presence. In September of 2002, Dixon met with Schiller and Christopher Koch ("Koch") (Director of Teaching and Learning at ISBE), and asked to change positions at ISBE.

In November 2002, senior management at ISBE undertook an assessment of the needs of various departments within the Board. It was determined that two departments were in critical need of qualified personnel: Teacher Certification, and Special Education. Koch then transferred Dixon to the Certification department of ISBE. Koch made this decision because he believed that Dixon's expertise in computer and internet technology, combined with Dixon's managerial skills and experience, made Dixon a good fit for that department. Dixon's new duties at Certification were to include learning complex federal laws and state regulations regarding teacher certification, giving presentations to teachers and administrators, and running the department while Linda Sullivan, the Certification supervisor, was absent. Following this transfer, Dixon retained his job title, same rate of pay, and seniority.

Dixon, however, reacted negatively to this transfer. He asserted that this new position involved nothing but clerical duties, and complained about the lack of parking near the Loop Certification office. In addition, Dixon feared that the Certification office would close due to ISBE reorganization, or possible cuts in the Illinois state budget. Dixon therefore decided to take early retirement from ISBE in February of 2003. The Certification department at ISBE never closed or ceased to function.

## B. Procedural History

Dixon first filed a grievance with the Department of Human Resources ("HR") at ISBE on December 11, 2002. However, Dixon retired from ISBE before HR could complete its

investigation into this matter. Dixon then filed a charge of race, age, and disability discrimination with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC") on January 27, 2003. Dixon received his right to sue letter from the EEOC on December 3, 2003. Finally, Dixon filed his First Amended Complaint in the District Court on July 16, 2004, alleging only race discrimination. Defendants moved for summary judgment on June 7, 2005.

## II. DISCUSSION

### A. Standard for Summary Judgment

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High Sch. Dist. No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. FED. R. CIV. P. 56(c); see also Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir. 1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Wolf v. Buss

(America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When the defendant moves for summary judgment, the court must view the record and all inferences in a light most favorable to the plaintiff. Ameritech Benefit Plan Comm. v. Communication Workers of Am., 220 F.3d 814, 821 (7th Cir. 2000). However, the inferences construed in the plaintiff's favor must be drawn from specific facts identified in the record that support the plaintiff's position. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 922-23 (7th Cir. 1994). Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d, 890, 892-93 (7th Cir. 2003)(citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

## B. Defendants' Motion for Summary Judgment

The court notes that Dixon has brought counts of racial discrimination pursuant to both Title VII and 42 U.S.C. § 1981. In the Seventh Circuit, it is settled law that "the methods and order of proof applicable to a claim of disparate treatment under Title VII are equally availing under § 1981." Randle v. LaSalle Telecomm., Inc., 876 F.2d 563, 568 (7th Cir. 1989); see also EEOC v. Ferguson, 334 F.3d 656, 658 (7th Cir. 2003); Johnson v. City of Fort Wayne, 91 F.3d 922, 940 (7th Cir. 1996). The court will therefore analyze these claims jointly.

### *1. Disparate Terms and Conditions of Employment Due to Racial Discrimination*

Dixon asserts that he was subject to disparate terms and conditions of employment at ISBE due to his race, in violation of Title VII of the Civil Rights Act of 1964. First Am'd Compl., ¶ 13. Under Title VII, an employer may not "limit, segregate, or classify his employees . . . in any way which would . . . adversely affect [an employee's] status as an employee, because

of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(2). This statute has been interpreted by courts to forbid employers from discriminating in terms of, *inter alia*, "terms and conditions of employment." Hunt v. City of Markham, 219 F.3d 649, 654 (7th Cir. 2000). In order to recover under this statute, a plaintiff must show that he was subject to an "adverse employment action." See id. at 653-54. However, this statute is "not intended to reach every bigoted act or gesture that a worker might encounter in a workplace." Id. at 653. To be successful under this statute, a plaintiff must allege some tangible loss. See Fortier v. Ameritech Mobile Comm., Inc. 161 F.3d 1106, 1111n.7 (7th Cir. 1998).

Typically, an adverse, or tangible, employment action under this statute will "inflict[] direct economic harm" on the plaintiff. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 762 (1998). Examples of typical adverse employment actions are "firing, failing to promote, reassignment with significantly [diminished] responsibilities, or a decision causing a significant change in benefits." Id. at 761; see also Crady v. Liberty Nat. Bank and Trust Co. of Ind., 993 F.2d 132, 136 (7th Cir. 1993). Some adverse employment actions may not involve direct economic harm, but do involve some loss to the employee, such as "reducing the employee's career prospects," or creating some sort of "hardship" for the employee. Tart v. Ill. Power Co., 366 F.3d 461, 475 (7th Cir. 2004). For instance, losing an office, telephone, and secretary is an adverse employment action. Collins v. Illinois, 830 F.2d 692, 704 (7th Cir. 1987). Being transferred to a significantly lower-level position is also an adverse employment action. Dahm v. Flynn, 60 F.3d 253 257-58 (7th Cir. 1994). However, "[n]ot everything that makes an employee unhappy is an actionable adverse action." Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996). "[A] 'bruised ego' is not enough." Burlington Industries, 524 U.S. at 761.

## 2. *Discriminatory Intent and the McDonnell Douglas Standard*

In order to succeed in a claim of racial discrimination under Title VII, a plaintiff must prove his or her employer's discriminatory intent by direct or indirect evidence. Little v. Ill. Dep't of Revenue, 369 F.3d 1007, 1011 (7th Cir. 2004); see also Bahl v. Royal Indem. Co., 115 F.3d 1283, 1290 (7th Cir. 1997). Direct evidence of discriminatory intent is evidence that shows the employer's intent without the need to rely on "inference or presumption." Bahl, 115 F.3d at 1290 n6. Direct evidence is evidence that "speak[s] directly to the issue of discriminatory intent, [and] also relate[s] to the specific employment decision in question." Oates v. Discovery Zone, 116 F.3d 1161, 1170 (7th Cir. 1997). It is likely the case that the only real direct evidence of discriminatory intent is an admission by the employer. Logan v. Kautex Textron N. Am., 259 F.3d 635, 638 (7th Cir. 2001); Troupe v. May Dep't Stores Co., 20 F.3d 734, 736 (7th Cir. 1994).

To proceed by means of indirect evidence, a plaintiff must use the familiar McDonnell Douglas burden-shifting method. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). Under this method, a plaintiff must first establish a prima facie case. A prima facie case of discrimination must show 1) that the plaintiff was "within a protected class," 2) that the plaintiff "was performing to the employer's legitimate expectations," 3) that she "suffered an adverse employment action," and 4) that the employer "treated similarly situated employees of a different race more favorably." Kautex, 259 F.3d at 639; see also Little, 369 F.3d at 1011. If the plaintiff presents a prima facie case, there is a presumption of discrimination, and the burden shifts to the employer to show a "legitimate, nondiscriminatory reason" for the adverse employment action. Stockett v. Muncie Ind. Transit Sys., 221 F.3d 997, 1001 (7th Cir. 2000); see also Little, 369 F.3d at 1011. If the employer can show a facially legitimate reason for the

7

adverse employment action, the burden shifts back to the plaintiff to show that the proffered reason was pretextual. Stockett, 221 F.3d at 1001; see also Gordon v. United Airlines, 246 F.3d 878, 886 (7th Cir. 2001).

### 3. Dixon Fails to Present Direct Evidence of Racial Discrimination

Direct evidence of discriminatory intent is evidence that shows the employer's intent without the need to rely on "inference or presumption." Bahl, 115 F.3d at 1290n6. Direct evidence is evidence that "speak[s] directly to the issue of discriminatory intent, [and] also relate[s] to the specific employment decision in question." Oates v. Discovery Zone, 116 F.3d 1161, 1170 (7th Cir. 1997). It is likely the case that the only real direct evidence of discriminatory intent is an admission by the employer. Logan v. Kautex Textron N. Am., 259 F.3d 635, 638 (7th Cir. 2001); Troupe v. May Dep't Stores Co., 20 F.3d 734, 736 (7th Cir. 1994). In this case, Dixon presents no evidence that anyone at ISBE admitted any discriminatory intent before, during, or after transferring Dixon to the Certification division. Dixon must therefore proceed by means of the McDonnell Douglas burden shifting method.

### 4. Dixon Fails to Establish a Prima Facie Case of Racial Discrimination

In order to establish a prima facie case of race discrimination, Dixon must show 1) that he was "within a protected class," 2) that he "was performing to [ISBE's] legitimate expectations," 3) that he "suffered an adverse employment action," and 4) that ISBE "treated similarly situated employees of a different race more favorably." See Kautex, 259 F.3d at 639; see also Little, 369 F.3d at 1011. Dixon fails to satisfy the third and fourth elements of his prima facie case.

First, Dixon cannot establish that he has suffered an adverse employment action. Dixon's transfer to the Certification department can be described as a lateral transfer. Dixon did not lose

his job title, any pay, or seniority as a result of this transfer. Moreover, Dixon was to assume new and important responsibilities at the Certification department, such as learning and implementing Federal and State regulations regarding teacher certification. Dixon may have experienced some inconvenience and anxiety regarding this transfer. However, "[b]y definition, any lateral job transfer will result in changes to an employee's job responsibilities and work conditions. To sustain a federal discrimination suit, a plaintiff must show more than the ordinary difficulties associated with a job transfer." O'Neal v. City of Chicago, 392 F.3d 909, 913 (7th Cir. 2004). Dixon has not made such a showing.

Neither has Dixon shown that he was constructively discharged from his position at ISBE. An employee has been constructively discharged when his or her "working conditions were so intolerable as a result of unlawful discrimination that a reasonable person would be forced into involuntary resignation." Tutman v. WBBM-TV, Inc./CBS, Inc., 209 F.3d 1044, 1050 (7th Cir. 2000). In addition, constructive discharge may have occurred where "an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns . . . ." EEOC v. Univ. of Chi. Hosps., 276 F.3d 326, 332 (7th Cir. 2002). Dixon has submitted no evidence that he was constructively discharged in either manner.

Second, Dixon has not shown that a similarly situated employee of a different race was treated more favorably. To show that another employee was similarly situated, Dixon must show that the other employee was "directly comparable [to him] in all material aspects." Hudson v. Chi. Transit Authority, 375 F.3d 552, 561 (7th Cir. 2004). Dixon has presented no evidence that any such employee was treated more favorably than he was.

The court thus dispositively determines that Dixon has failed to state a prima facie case of race discrimination under Title VII. See Kautex, 259 F.3d at 639. It is therefore unnecessary to consider whether ISBE can offer a legitimate, nondiscriminatory reason for any alleged adverse employment action, or whether Dixon can show that any such reason was pretextual. See Stockett, 221 F.3d at 1001.

### III. CONCLUSION

Defendants, as summary judgment movants, have the burden of showing "that there is no genuine issue of material fact and that [they are] entitled to judgment as a matter of law." East-Miller v. Lake County Highway Dept., – F.3d –, slip op. at 4 (7th Cir. Aug. 31, 2005). However, the non-moving party, Dixon, "retains the burden of producing enough evidence to support a reasonable jury verdict in [his] favor." Id. Dixon must therefore "affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." Id. As Dixon has submitted no response to Defendants' Motion for Summary Judgment, Dixon has failed to meet his burden. Taking Defendants' factual allegations as admitted, see Malec, 191 F.R.D. at 584, the court finds that Defendants have met their burden in this case.

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted.

IT IS SO ORDERED.

ENTER:

_[signature]_

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: September 23, 2005